UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

SHAWN GREEN

                Plaintiff,

      - against -

KENNETH MCLAUGHLIN, et. al.,

               Defendants.

------------------------------------------------x

07 Civ. 0263 (TPG)

**OPINION**

      The court filed an opinion dated March 31, 2008 dismissing this action. On appeal, the Court of Appeals remanded on April 22, 2010, finding that the court had not fully explained its reasons for the ruling.

      The March 31, 2008 opinion contained a lengthy summary of the complaint which, in the view of the court, made it evident that the allegations did not present a sufficient case of constitutional violation. Moreover, the court noted that plaintiff had filed at least 50 lawsuits during his ten years of incarceration and appeared to be using the federal and state courts to wage an attack on the New York state prison system. However, in light of the remand, the following further explanation is provided.

## FACTS

The allegations in the complaint apparently stem from two incidents that occurred on March 23, 2004. While the first incident is not spelled out in any detail, it appears that defendant Sarles issued a misbehavior report for failing to tuck in his shirt and follow orders, which was endorsed by defendant Huttel. Plaintiff alleges that there was no procedure regarding the tucking in of a shirt when exiting the recreation yard and that the true reason Sarles filed the report was that plaintiff had been "running his mouth."

Hours later, plaintiff was taken to the shower by Huttel. The complaint alleges that after his mechanical restraints were removed, Huttel attacked plaintiff in the shower. Once plaintiff was freed of Huttel's grasp, the complaint alleges that plaintiff exited the shower and was then attacked by defendants Tillotson and Sarles. He sustained injuries to his lower back, wrists, and jaw and states that he was given ibuprofen and experienced post-traumatic stress disorder. Huttel allegedly wrote up a false incident report, which was signed by Sarles and Tillotson. Defendant Markham also allegedly reported that plaintiff was interviewed about the incident, but plaintiff alleges that he does not recall being interviewed or providing a statement.

## VIOLATIONS ALLEGED

The alleged constitutional violations against each defendant are as follows:

1. Against Officers Sarles and Huttel for preparation and endorsement of false misbehavior reports, and against Officers Sarles, Huttel, and Tillotson for willfully endorsing the false misbehavior reports.

2. Against Superintendent Phillips for transferring plaintiff out of Green Haven for retaliatory purposes because of a prior complaint, without any legitimate correctional goals. Along with Inspector General McLaughlin, Phillips is also alleged to have been grossly negligent in managing subordinates who caused the incidents and refusing to investigate misconduct complaints submitted by plaintiff. Further, it is alleged that they have engendered a custom under which the unconstitutional practices occur.

3. Against Sergeant Markham for gross negligence in the management of subordinates – specifically, for being present for a conflict in the recreation yard between plaintiff and the officers and later allowing one of those officers to escort plaintiff to a shower that required that handcuffs be removed before the door is closed.

4. Against an unnamed Affirmative Action Administrator for failing to remedy discriminatory acts of other defendants after learning of them through grievances.

5. Against Eagan, the former director of the inmate grievance program for the New York State Department of Correctional Services ("DOCS"), for failing to prevent the Central Office Review Committee from formulating new procedures to ensure "relevant medical evidence, classification review materials and unscheduled transfer requests" to be presented to the review committee, and for allowing a custom of not filing inmates' submitted responses.

6. Against unidentified personnel for preparing a copy of a surveillance tape requested for a disciplinary review that excluded "Huttel attacking plaintiff in the shower area, in a willful manner."

7. Against Lieutenant Gotsch for improperly relying on Sarles's testimony regarding the disturbance in the courtyard despite knowing there was no procedure regarding the tucking in of a shirt and for failing to obtain a surveillance tape of the incident in which Huttel attacked plaintiff.

8. Against the Director of Special Housing/Inmate Disciplinary Program Selsky for affirming discipline imposed on plaintiff because of the March 23 misbehavior report, despite "the various procedural errors."

9. Against Rosario, the Records Access Officer, for informing plaintiff that "there is no camera directed into the four company shower" without making a diligent search."

10. Against Goidel for not filing plaintiff's grievances in the proper timeframe, in order to delay any meaningful investigation.

11. Against Temple, the Facility Health Services Director. Defendants' memorandum in support of their motion to dismiss suggests these claims were actually alleged against Dr. Koenigsmann. Regardless, the claims are alleged to be against "the Facility Health Services Director." First, for submitting a "UTR" (presumably a transfer) for plaintiff. Second, for treating defendant differently from other inmates with regard to medical holds, by continuously reviewing his medical chart and not considering that transfer would hinder his medical care, and for changing his medical level from 1 to 2, which discontinued his medical hold. Further, Temple was aware that plaintiff had been awaiting follow-up specialist medical care that prohibited him from being transferred. Finally, Temple knew that diabetes can be serious and disregarded any health risk to plaintiff, which resulted in plaintiff suffering three hypoglycemia incidents at Southport in 2004.

12. Against Koenigsmann for deliberately postponing scheduling plaintiff's follow-up specialist appointments to avoid placing a mandatory medical hold on plaintiff.

Finally, it should be noted that plaintiff has alleged that all of the defendants were engaged in a conspiracy with the other defendants to violate his constitutional rights.

## DISCUSSION

When deciding a motion to dismiss, the court must view all facts in the light most favorable to the plaintiff. Even viewing all of the facts in this light, plaintiff has not alleged valid constitutional claims.

Regarding plaintiff's claim that false misbehavior reports were issued and endorsed, the Second Circuit has held that "a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). However, that case made clear that prison inmates may not be deprived of a protected liberty interest without due process of law. See id. Here, plaintiff did not allege that there was no hearing or that he was not given a right to appeal, and he does not allege any due process violations except to state in a conclusory fashion that the hearing officer's decision contained "various procedural errors." The only specific procedural errors he cites are that the hearing officer would not obtain a surveillance tape of the incident. However, a letter included with the

6

complaint from the Records office clearly states that such a videotape does not exist, and the court has no reason to discredit this information. The existence of a surveillance tape is not constitutionally required. Thus, the complaint has not alleged any facts that would suggest that his constitutional due process rights were violated.

With regard to plaintiff's claim concerning the alleged attack, courts have held that in order to bring a Section 1983 action for such alleged incidents, the injuries sustained must be serious enough to constitute a constitutional violation. The Supreme Court has stated that the "Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).

Plaintiff alleges that he was "attacked" and "sustained injuries to his lower back, wrists, and jaw" and "was given ibuprofen and suffered post-traumatic stress disorder." A medical examination report dated March 23, 2004, attached to the complaint, states that there were no signs of injuries, swelling, or bruising. It further states that no treatment was necessary and that ibuprofen was offered but the inmate refused it. Because plaintiff has not alleged any facts suggesting that the use of force was for any reason other than to restrain him or was "repugnant to

the conscience of mankind," plaintiff has not successfully alleged that this incident rises to the level of a constitutional violation.

Regarding plaintiff's conspiracy claims, plaintiff has not alleged anything more than conclusory allegations of conspiracy. Thus, it does not require further discussion and is hereby dismissed.

## CONCLUSION

For the reasons stated above, the complaint is dismissed without leave to replead.

SO ORDERED

Dated: New York, New York
      May 21, 2010

                                        Thomas P. Griesa
                                        U.S.D.J.